UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBIE STEIN,<br>            Plaintiff,<br>    v.<br>CITY OF PIEDMONT, et al.,<br>            Defendants. | Case No. 16-cv-01172-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 8 |

## I. INTRODUCTION

This is a 42 U.S.C. § 1983 action brought by Plaintiff Bobbie Stein against Defendants Sergeant Catherine Carr, Officer Kristina Foster, Chief Rikki Goede, the City of Piedmont (the "City"), and Doe Defendants. Stein alleges that on March 11, 2014, Sergeant Carr and Officer Foster (collectively, the "Defendant Officers") violated Stein's rights under the Fourth and Fourteenth Amendments by unlawfully arresting Stein, unlawfully entering and searching Stein's home, and using excessive force. Stein further alleges that Chief Goede and the City, by their acts and omissions, caused those constitutional violations. Defendants now move to dismiss the claim against the Defendant Officers under the Fourteenth Amendment, the claim against Chief Goede, and the claim against the City for failure to state a claim on which relief could be granted. Mot. (dkt. 8). Defendants do not seek to dismiss Stein's claim against the Defendant Officers under the Fourth Amendment. The Court held a hearing on August 12, 2016. For the reasons explained below, Defendants' Motion to Dismiss is GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Factual Allegations and Complaint

The following summary recounts the facts as alleged by Stein in her Complaint. This Order should not be interpreted as resolving any disputed issues of fact.

Stein's son is a young man who suffers from Tourette's syndrome, which is characterized by involuntary, rapid, and sudden repetitive movements and loud sounds, known as tics. Compl. (dkt. 1) ¶¶ 3, 22. Stein's son had lived in Piedmont for fourteen years as of March, 2014. *Id.* ¶ 24. His condition was well known to the Piedmont police department because the police had been called to Stein's home on multiple occasions when her neighbors reported loud noises coming from her home. *Id.* ¶¶ 23–25. On those occasions, the police did not discover any evidence suggesting that Stein's son had been physically or verbally abused. *Id.* ¶ 25. Stein's son also suffers from Post-Traumatic Stress Disorder ("PTSD"), stemming from an incident in which he was beaten by Milwaukee police when he was ticcing and slapping his own face. *Id.* ¶ 33. Because of his PTSD, the presence of police makes Stein's son more anxious and frightened and increases his ticcing. *Id.* Stein had previously told officers of the Piedmont police department about the incident with Milwaukee police and her son's resulting PTSD. *Id.*

On March 11, 2014, Stein briefly left her home and returned shortly before 9 a.m., when she heard her son ticcing loudly for a brief time. *Id.* ¶¶ 26–27. Soon after the ticcing stopped, Officer Foster, who was well acquainted with Stein's son and his condition, and Sergeant Carr arrived at Stein's home. *Id.* ¶ 28. Stein apologized to the Defendant Officers for the noise but assured them that her son was back in bed and sleeping. *Id.* ¶ 29. Although the house was quiet at this time, the Defendant Officers told Stein to "step outside of the house" and when Stein questioned why she needed to step outside, the Defendant Officers simply repeated the order. *Id.* ¶¶ 30–31. Stein complied with the order and repeated her explanation that her son suffered from Tourette's syndrome and that the earlier tic episode had been resolved. *Id.* ¶¶ 31–32. The Defendant Officers nevertheless demanded that Stein step aside so that they could enter the house. *Id.* ¶ 32. During this time, Stein feared that her son would suffer another ticcing episode as a result of his PTSD if the Defendant Officers were to surprise him in his bedroom. *Id.* ¶ 33.

Sergeant Carr proceeded to place her hand on Stein's shoulder, seeking to control Stein's movement. *Id.* ¶ 34. When Stein asked Sergeant Carr to remove her hand, the Defendant Officers pushed Stein down and yelled "get on the ground" as she tumbled down. *Id.* ¶¶ 35–36. The Defendant Officers subsequently jumped on top of Stein, violently twisted her arms, and handcuffed her behind her back. *Id.* ¶ 37. Stein asked the Defendant Officers to not handcuff her behind her back because she suffered from a frayed rotator cuff, but the Defendant Officers ignored the request and continued to sit on Stein. *Id.* ¶¶ 38–39. During this time, Stein's face was pushed into a patch of mud and Stein injured her hand, wrist, and knee. *Id*. ¶¶ 39–40. Sergeant Carr stated, "if you hadn't beaten me up, this would not have happened," and proceeded to call for backup. *Id.* ¶¶ 41–42. While Sergeant Carr continued to sit on top of Stein, Officer Foster entered Stein's home without Stein's consent. *Id.* ¶ 43. Backup officers subsequently arrived, some with riot shields, and proceeded to enter Stein's home and block all means of egress. *Id.* ¶ 44. Several officers escorted Stein's son downstairs from his bedroom and questioned him in an attempt to induce him to state that Stein had hit him. *Id.* ¶ 45. Stein's son did not make any such statements. *Id.* Sergeant Carr pushed Stein down the street and locked her in the back of a patrol car. *Id.* ¶¶ 46–47. Stein heard police communications reporting that nothing was amiss and she was subsequently released. *Id.* ¶¶ 48–49. Stein believes and alleges that the Defendant Officers' conduct was motivated by outrage at Stein's assertion of her constitutional rights. *Id.* ¶ 53.

Stein asserts four claims under § 1983 based on the March 11, 2014 incident. First, Stein claims that the Defendant Officers and Doe Defendants violated her Fourth Amendment protections against unlawful arrest, unlawful entry and search, and excessive force. *Id.* ¶¶ 58–64. Second, Stein claims that the Defendant Officers and Doe Defendants violated her Fourteenth Amendment rights to "not be deprived of life and liberty without due process of law" and to be free from cruel and unusual punishment, by "subjecting her, or allowing others to subject her, to improper arrest procedures." *Id.* ¶¶ 65–70. Third, Stein claims that Chief Goede and Doe Defendants caused the constitutional violations by their acts and omissions as supervisors of the Defendant Officers and Doe Defendants. *Id.* ¶¶ 71–76. Fourth, Stein claims that the City caused the constitutional violations by its acts and omissions as the municipality governing the police

1  department of the Defendant Officers and Doe Defendants. *Id.* ¶¶ 77–83. Stein seeks monetary
2  damages as well as other equitable relief as appropriate, including an injunction to prohibit
3  Defendants' continued violations. *Id.* at 15–16 (prayer for relief).

### B. Motion to Dismiss

In their Motion, Defendants seek to dismiss Stein's second, third, and fourth claims, but do not seek to dismiss Stein's first claim. Mot. at 1.[2]

Defendants contend that Stein's second claim must be dismissed because when a particular Amendment provides an "explicit textual source of constitutional protection" against a particular type of government behavior, a claim for that type of government behavior must be brought under the particular Amendment rather than under the Fourteenth Amendment. *Id.* at 5 (quoting *Albright v. Oliver*, 510 U.S. 266, 271, 273 (1994) (plurality opinion)). Defendants argue that here, the Fourth Amendment is an "explicit textual source of constitutional protection" against pretrial deprivations of liberty and, therefore, Stein's claim for "improper arrest procedures" must be brought under the Fourth Amendment rather than under the Fourteenth Amendment. *Id.* at 6. Defendants seek to dismiss the second claim with prejudice. *Id.*

Defendants argue that Stein's third claim for supervisor liability must be dismissed for failure to state a plausible right to relief. *Id.* at 6–7. Defendants contend that Stein's allegations against Chief Goede are factually unsupported and consist merely of "vague conclusions." *Id.* at 7. Defendants further contend that supervisory liability must be "specifically alleged" and that Stein's allegations fail to meet this requirement. *Id.* (quoting *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001)).

Similarly, Defendants contend that Stein's fourth claim for municipal liability must be dismissed for failure to state a plausible right to relief. *Id.* at 7–11. First, Defendants argue that Stein fails to state a plausible claim of municipal liability based on a pattern, policy, or custom, because Stein does not allege facts showing a practice or custom extending beyond the March 11,

---

[2] Defendants also sought to dismiss Stein's prayer for injunction. Mot. at 12–13. In her Opposition, Stein states that she no longer believes that an injunction will be necessary. Opp'n at 10. Accordingly, Stein's prayer for injunction is stricken from the Complaint without prejudice.

United States District Court
Northern District of California

2014 incident or any "'widespread practice,' of sufficient duration, frequency and consistency." *Id.* at 8–9 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)). Second, Defendants contend that Stein fails to state a plausible claim under a ratification theory because the mere refusal to overrule a completed act or failure to reprimand is not sufficient to establish municipal liability by ratification. *Id.* at 9 (citing *Christie v. Iopa*, 176 F.3d 1231, 1239–1240 (9th Cir. 1999)). Defendants argue that here, Stein merely recites the elements of municipal ratification and, at best, establishes a mere failure to overrule. *Id.* at 9–10. Third, Defendants contend that Stein fails to state a plausible claim of municipal liability based on inadequate training because Stein merely alleges conclusions and a formulaic recitation of elements without any supporting facts. *Id.* at 11.

### C. Opposition

In her Opposition, Stein explains that her first claim—which Defendants do not challenge here—adequately states claims under the Fourth Amendment for unlawful arrest, unlawful entry into her home, and excessive force. Opp'n (dkt. 13) at 2–5. Stein then defends her second, third, and fourth claims in turn.

Stein argues that her second claim should not be dismissed because it states an alternative claim for relief. *Id.* at 5. Stein agrees that "the Fourth Amendment applies here," but she contends that unless Defendants concede that there has been a search or seizure, she is entitled to set forth an alternative theory of recovery under the Fourteenth Amendment. *Id.* at 5–6.

Stein contends that her third claim should not be dismissed because, in light of the fact that the Piedmont police department is "ridiculously small," it is reasonable to infer that Chief Goede was aware of the "ongoing situation" regarding Stein's son and his condition, had an opportunity to prevent the March 11, 2014 incident, and was aware of the incident as it was unfolding. *Id.* at 7–8. With these inferences, according to Stein, the Complaint states a plausible claim of supervisor liability and Chief Goede has "ample 'fair notice' of what this case is about." *Id.* at 8.

Finally, Stein contends that her fourth claim should not be dismissed because it "easily satisfies the liberal pleading standards under settled Ninth Circuit authority." *Id.* According to Stein, a claim of municipal liability under § 1983 can withstand a motion to dismiss even if it

5

consists only of bare allegations. *Id.* at 8–9 (citing decisions from the Northern District of California). Stein argues that her fourth claim meets this pleading standard. Stein further argues that in light of the allegations that her son's condition was well known to officers of the Piedmont police department and that the police department is "not much larger than a postage stamp," it is plausible that the City acted with deliberate indifference to Stein's rights in failing to enact necessary policies and adequately train its officials and that the City ratified the misconduct of the Defendant Officers. *Id.* at 9.

### D.    Reply

In their Reply, Defendants first contend that Stein only states claims for unlawful arrest, unlawful entry, and excessive force, which must be analyzed under the Fourth Amendment rather than the Fourteenth Amendment. Reply (dkt. 14) at 3. Defendants further argue that to the extent that Stein claims an alternate theory of liability under the Fourteenth Amendment, she fails to allege any supporting facts. *Id.*

In regard to the third claim, Defendants respond that the facts identified in Stein's Opposition fail to support the "inferential leap" that Chief Goede knew of the March 11, 2014 incident "as it was unfolding" or that she failed to prevent it, noting that it is possible that Chief Goede was not present in the City at the time of the incident. *Id.* at 4–5. Defendants contend that Stein also fails to show a "sufficient causal connection" between Chief Goede's conduct and the alleged constitutional violations. *Id.* at 5 (quoting *Jeffers*, 267 F.3d at 915).

In response to Stein's argument that Ninth Circuit precedent has set a liberal pleading standard for municipal liability, Defendants argue that more recent Ninth Circuit authority expressly rejected the previous pleading standard and required that a plaintiff plead sufficient facts to plausibly suggest an entitlement to relief. *Id.* at 5–6 (citing *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).

## III.    ANALYSIS

### A.    Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss

under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Stein's Fourteenth Amendment Claim is Duplicative of the Fourth Amendment Claim and May Not be Pled in the Alternative

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v.*

*McCollan*, 443 U.S. 137, 144 n.3 (1979)). A claim under § 1983 may be brought for violations of the substantive due process rights protected by the Fourteenth Amendment, but if the claim "is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Here, Stein asserts her second claim under the Fourteenth Amendment for violations of her right to "not be deprived of life and liberty without due process of law" and to be free from cruel and unusual punishment.[3] Compl. ¶ 66. Other than alleging "improper arrest procedures," Stein does not state any allegations as to how her substantive due process rights were violated and merely alleges "wrongful and conscience-shocking conduct" that was committed "knowingly, maliciously, and with conscious disregard for her rights and safety." *Id.* ¶¶ 67–70. In her Opposition, Stein contends that although "the Fourth Amendment applies here," the Fourteenth Amendment claim is pled in the alternative because the Fourteenth Amendment applies "in the absence of a search or seizure." Opp'n at 5 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)).

In *County of Sacramento*, however, the U.S. Supreme Court found that the Fourth Amendment did not "cover" plaintiffs' claims where a police car accidentally crashed into plaintiffs' decedent without intent to restrict decedent's freedom of movement, and accordingly, the Court applied the substantive due process standards under the Fourteenth Amendment. *Cnty. of Sacramento*, 523 U.S. at 843–44. The Court did not hold that a plaintiff may alternatively plead under the Fourteenth Amendment even if the Fourth Amendment specifically covers his or her claims, and, to the contrary, expressly stated that substantive due process analysis is "inappropriate" when a plaintiff's claim is "covered by" the Fourth Amendment. *Id.* at 843.[4]

Here, as conceded by Stein, the Fourth Amendment specifically "covers" Stein's claims for

---

[3] The Eighth Amendment, rather than the Fourteenth Amendment, protects against cruel and unusual punishment.
[4] Stein also points to *United States v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990), but fails to indicate its relevance to her argument. Opp'n at 5. The Court has found nothing in *Attson* to support Stein's argument on this issue.

8

"improper arrest procedures" because the Fourth Amendment "addresses 'pretrial deprivations of liberty.'" *See Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). Stein's claims, therefore, must be brought under the Fourth Amendment and she may not state a Fourteenth Amendment claim in the alternative. *See Lanier*, 520 U.S. at 272 n.7.

Stein's Fourteenth Amendment claim is dismissed without prejudice. *See Johnson v. City of Berkeley*, No. 15-cv-05343-JSC, 2016 WL 928723, at *7 (N.D. Cal. Mar. 11, 2016) (holding that a Fourteenth Amendment claim was duplicative of a Fourth Amendment claim, where the plaintiffs argued that the Fourteenth Amendment claim was alternatively pled in case the court found that there was no Fourth Amendment seizure). Stein may only amend if she is aware of additional facts supporting a claim for violation of her right to due process, independent of the alleged Fourth Amendment violations. To the extent that Stein's third and fourth claims are predicated on violations of the Fourteenth Amendment, those claims are dismissed without prejudice as well.

### C. Stein Fails to State a Plausible Claim for Supervisor Liability

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. A supervisor, however, may be liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (alterations in original; citations omitted). "'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

In her Opposition, Stein argues that her claim for supervisor liability is plausible because the Piedmont police department is "ridiculously small," Stein's son and his condition were well known to the police department, and there were multiple previous encounters between Stein and the police department due to Stein's son. Opp'n at 7. Stein contends that in light of these facts, it is reasonable to infer that: (1) Chief Goede knew Stein's son and his condition; (2) the March 11, 2014 incident was predictable and Chief Goede had an opportunity to prevent it; and (3) Chief Goede knew of the incident "as it was unfolding." *Id.* at 7–8.[5] Even assuming for the sake of argument that the first inference is plausible from the size of the department alone, the second and third inferences are not.

*Starr*, cited by Stein, does not lend support to her arguments. In *Starr*, the court held that the plaintiff sufficiently alleged a § 1983 claim for supervisor liability against the defendant, who was the sheriff of the county jail in which the plaintiff was an inmate, where the plaintiff described numerous, serious, and continuing constitutional violations by the defendant's subordinates and plausibly alleged that the defendant was well aware of these violations. *Starr*, 652 F.3d at 1209–1213, 1217. Here, although Stein alleges that Piedmont police officers had been called to her home multiple times because of her son's condition, she does not allege that the police officers committed any constitutional violations prior to the March 11, 2014 incident or that there were any prior conflicts with the police officers. Compl. ¶ 25. Unlike in *Starr*, where the plaintiff's injury was predictable on the basis of numerous prior constitutional violations which the defendant was aware of, Stein fails to plausibly allege that there was any basis on which Chief Goede could have foreseen the March 11, 2014 incident. *See Starr*, 652 F.3d at 1209–1213. Further, the facts alleged by Stein, none of which specifically involve Chief Goede, do not plausibly support the inference that Chief Goede knew of the March 11, 2014 incident "as it was unfolding." The Court thus cannot infer that Chief Goede had an opportunity to prevent the incident and without such an

---

[5] Stein additionally points to the allegation that Chief Goede failed to reprimand the Defendant Officers, but the failure to reprimand, after the incident had already occurred, could not have caused the incident itself. Thus, this allegation fails to establish "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *See Hansen*, 885 F.2d at 646.

inference, Stein's allegations fail to establish Chief Goede's "personal involvement in the constitutional deprivation" or "a sufficient causal connection between [Chief Goede's] wrongful conduct and the constitutional violation." *See Hansen*, 885 F.2d at 646.

Stein's third claim against Chief Goede amounts to nothing more than a recitation of the elements for supervisor liability. Compl. ¶¶ 72–76. Stein does not plausibly state an entitlement to relief against Chief Goede.

### D. Stein Fails to State a Plausible Claim for Municipal Liability

#### 1. Legal Standard for Municipal Liability Under § 1983

A municipality can be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). It cannot, however, be held liable vicariously for their employees' actions on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. "[L]ocal governments are responsible only for 'their *own* illegal acts.'" *Connick*, 563 U.S. at 60 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). To establish liability, a plaintiff "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). It is sufficient to show that the allegedly unconstitutional conduct was pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

Further, "[a]lthough a constitutional violation must result from 'official municipal policy,' a county need not expressly adopt the policy. It is sufficient that the constitutional violation occurred pursuant to a 'longstanding practice or custom.'" *Christie*, 176 F.3d at 1235. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "However, an isolated constitutional violation may be sufficient to establish a municipal policy in the following three situations: 1) 'when the person causing the violation has final policymaking authority'; 2) when 'the final policymaker ratified a subordinate's actions'; and 3) when 'the final

11

policymaker acted with deliberate indifference to the subordinate's constitutional violations.'" *Adamson v. City of San Francisco*, No. 13-cv-05233-DMR, 2015 WL 5467744, at *8 (N.D. Cal. Sep. 17, 2015) (quoting *Christie*, 176 F.3d at 1235) (citations omitted). Finally, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61.

In her Opposition, Stein argues that in order to state a claim for municipal liability under § 1983, a plaintiff need only set forth "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Opp'n at 8 (citing decisions from the Northern District of California). However, "[t]he Ninth Circuit has made clear that claims of *Monell* liability must now comply with the basic principles set forth in *Twombly* and *Iqbal*: (1) the complaint 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;' and (2) the 'factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *La v. San Mateo Cty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224, at *7 (N.D. Cal. Sept. 16, 2014) (quoting *Starr*, 652 F.3d at 1216; citing *A.E.*, 666 F.3d at 636–37).

Here, the precise basis for Stein's municipal liability claim is unclear, but Stein appears to claim municipal liability based on officially adopted policy, improper custom, ratification, deliberate indifference, and inadequate training. The Court finds that Stein fails to state a plausible claim under each of these theories of municipal liability.

### 2. Officially Adopted Policy and Improper Custom

Stein alleges that the Defendant Officers' conduct was pursuant to a variety of the City's policies, including:

(a) Failing to obtain required arrest and search warrants;

(b) Failing to engage in reasonable and proper arrest procedures including use of unnecessary and excessive force;

(c) Failing to provide proper and appropriate training and testing of deputies;

(d) Failing to adopt and enforce appropriate policies and procedures for the handling of cases involved individuals with Tourette's Syndrome and other neurological conditions;

(e) Condoning and encouraging efforts to cover up violations of constitutional rights by officers;

(f) Failing to properly investigate and/or evaluate complaints or incidents;

(g) Ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity; [and]

(h) Ignoring proper requests for the release of public records in an effort to forestall investigation of officer misconduct.

Compl. ¶ 79 (punctuation altered for consistency). There are no factual allegations, however, to suggest that such policies actually exist as officially adopted policies or that Defendants' conduct was pursuant to such policies. Stein's Complaint, without more, fails to state a plausible claim for municipal liability based on an officially adopted policy.

Stein's allegations also fail to state a claim for municipal liability based on improper custom. As explained above, Stein alleges that Piedmont police officers had been called multiple times to her home because of her son's condition, but there is no indication that any officers committed constitutional violations during those occasions. Stein does not otherwise allege any facts to suggest that her claims are based on more than the March 11, 2014 incident. This is insufficient to establish a "longstanding practice or custom." *See Trevino*, 99 F.3d at 918 ("Liability for improper custom may not be predicated on isolated or sporadic incidents.").

### 3. Ratification

To establish municipal liability based on ratification, "the plaintiff must show that a 'policymaker,' acting with 'knowledge of [a subordinate's] alleged constitutional violation,' where such knowledge was obtained 'before the alleged constitutional violations ceased,' nonetheless 'approve[d] the subordinate's decision and the basis for it.'" *Mendy v. City of Fremont*, No. C–13–4180 MMC, 2014 WL 574599, at *4 (quoting *Christie*, 176 F.3d at 1238–39) (alterations in original). "For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Christie*, 176 F.3d at 1239.

1	Stein alleges that Chief Goede and other unnamed policymaking officials became aware of
2	the March 11, 2014 incident, and asserts, without any supporting factual allegations, that such
3	policymaking officials approved of and deliberately endorsed the Defendant Officers' conduct
4	and, by doing so, showed affirmative agreement with and ratified the constitutional violations.
5	Compl. ¶ 81.  Stein, however, fails to allege any facts to support the conclusion that policymakers
6	of the City became aware of the Defendant Officers' conduct "before the alleged constitutional
7	violations ceased." *See Christie*, 176 F.3d at 1239.  At best, Stein can only establish the
8	policymakers' "mere refusal to overrule a subordinate's completed act" which is insufficient to
9	state a ratification claim.  *See id.*  Stein therefore fails to state a plausible claim for municipal
10	liability based on ratification.

### 4. Deliberate Indifference and Inadequate Training

12	"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a
13	municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty.*
14	*Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  "To prove deliberate indifference, the plaintiff
15	must show that the municipality was on actual or constructive notice that its omission would likely
16	result in a constitutional violation." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1186 (9th Cir.
17	2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)).
18	To show municipal liability based on inadequate training, "a municipality's failure to train
19	its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons
20	with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (citing *City of*
21	*Canton v. Harris*, 489 U.S. 378, 388 (1989)) (alteration in original).  "Without notice that a course
22	of training is deficient in a particular respect, decisionmakers can hardly be said to have
23	deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at
24	62.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily
25	necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting
26	*Brown*, 520 U.S. at 409).
27	Stein contends that the fact that her son's condition was well known to the Piedmont police
28	officers, combined with the "exceedingly small" size of the police department, supports the

conclusion that the City's failure to enact allegedly necessary policies regarding those with Tourette's syndrome and alleged failure to adequately train its officials amounted to a "deliberate indifference" to the rights of Stein and her family. Opp'n at 9. Stein, however, alleges no prior constitutional violations by the Piedmont police officers and the mere fact that the police officers knew that Stein's son suffered from Tourette's syndrome, without any prior incidences of constitutional violations or injuries, could not have provided any actual or constructive notice to the City that a specific policy was necessary or that its training program was deficient. The factual allegations of Stain's Complaint do not give rise to a plausible inference that the City was on notice of constitutional violations. Without such notice, the City can "hardly be said to have deliberately chosen" the policies which caused violations of Stein's constitutional rights. *See Connick*, 563 U.S. at 62. The Court therefore finds that Stein fails to state a plausible claim of municipal liability based on deliberate indifference or inadequate training.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED, and Stein's Complaint is DISMISSED IN PART. Stein may file an amended complaint no later than August 29, 2016, or may move for leave to file an amended complaint no later than January 3, 2017.

**IT IS SO ORDERED.**

Dated: August 15, 2016

JOSEPH C. SPERO
Chief Magistrate Judge